2021 IL App (2d) 190863-U
No. 2-19-0863
Order filed February 4, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Carroll County. |
| Plaintiff-Appellant, | ) ) ) | Nos. 19-CM-16 19-CM-17 19-TR-136 |
| v. | ) ) | 19-TR-137 |
| MARIE A. WHITTEN, | ) ) | Honorable J. Jerry Kane, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court.
Justices Hudson and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's consent to a search of her person, as a condition of sitting in a squad car while waiting for a tow truck following a traffic accident, could not be reasonably understood as extending to the officer's search of her purse. Accordingly, we affirm the suppression of contraband seized from the purse.

¶ 2    Defendant, Marie A. Whitten, was charged with possession of drug paraphernalia (720 ILC 600/3.5(a) (West 2018)) and "possession of stolen property" (theft) (720 ILC 5/16-1(a)(1) (West 2018)), as well as traffic offenses, after a marijuana grinder and an apparently stolen credit card were found during a search of her purse following a traffic accident. Defendant moved to suppress

the evidence. She argued that, although she had consented to a search of her person, the warrantless search of her purse exceeded the scope of that consent. The trial court granted the motion, and the State appeals. We affirm.

¶ 3                                                                I. BACKGROUND

¶ 4      Testimony at the hearing on the motion to suppress revealed the following. On February 20, 2019, defendant drove her car off Argo Fay Road. It came to rest on its side in a field. Defendant could not remember if she fell asleep or if the car struck a patch of ice. She was examined by paramedics at the scene and declined further treatment.

¶ 5      Carroll County sheriff's deputy Christian Ponall testified that he responded to the scene. He remained with defendant as she waited for a tow truck. Ponall did not detect drugs or alcohol and had no reason to suspect defendant of a crime.

¶ 6      Because it was cold outside, Ponall offered to let defendant wait in the back of his squad car. She agreed. According to Ponall, he explained that his department's policy required him to search anyone who entered one of its vehicles. On cross-examination, he explained that he said, "If you would like to sit in my squad car you can, but I need to search you first."

¶ 7      Ponall testified that defendant gave her consent. He then searched defendant. After completing that search, Ponall searched defendant's purse, which was on the hood of his squad car. Ponall found a cannabis grinder inside the purse. Ponall placed defendant in the back seat of the squad car while he took the purse to the front seat and continued his search.

¶ 8      Defendant testified that Ponall said that he needed to search her before she entered the squad car. He did not explain the reason for the search. Nonetheless, she consented to the search. She placed her purse on the squad car while Ponall searched her. After the search, Ponall asked

defendant to sit in the squad car. Ponall told her that he needed to take the purse to the front seat with him for security reasons.

¶ 9    The trial court granted the motion to suppress. The court found that the department's policy of searching for security purposes anyone who entered one of its vehicles was reasonable and that defendant's consent to a search of her person was valid. However, the court found that the consent did not extend to a search of the purse. The State timely appeals.

¶ 10                                   II. ANALYSIS

¶ 11    In reviewing a ruling on a motion to suppress evidence, we defer to the trial court's factual findings and will reverse them only if they are contrary to the manifest weight of the evidence. *People v. Bridgewater*, 235 Ill. 2d 85, 92 (2009). We review *de* novo the trial court's ultimate ruling on whether evidence should be suppressed. *Id.* at 92-93.

¶ 12    The State contends that the trial court erred by finding that defendant's consent to a search did not extend to the purse. The fourth amendment to the United States Constitution (U.S. Const., amend. IV) prohibits warrantless searches subject to several specifically established and well-delineated exceptions. *People v. Bull*, 185 Ill. 2d 179, 196-97 (1998). One such exception is a search conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

¶ 13    When police rely upon consent as the basis for a warrantless search, they have no more authority than they have apparently received through the suspect's consent. 4 W. LaFave, Search & Seizure § 8.1(c) at 19 (4th ed. 2004). The standard for measuring the scope of consent is that of "objective reasonableness"; in other words, what would the typical reasonable person have understood by the exchange between the officer and the suspect? *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). In most cases, the scope of a search is defined by its expressed object or purpose. *Id.*; *People v. Baltazar,* 295 Ill. App. 3d 146, 150 (1998). "By stating the intended object of the search

either directly or by revealing a suspicion of specific criminal activity, a police officer not only apprises the suspect that his constitutional rights are being impacted, but he also informs the suspect of the reasonable parameters of his inquiry." *Baltazar*, 295 Ill. App. 3d at 150.

¶ 14    We note that in *People v. Smith*, 346 Ill. App. 3d 146, 164 (2004), this court approved the type of policy that the sheriff's department implemented here but held that the scope of a search under such a policy was extremely limited: "the need to transport a citizen in a police vehicle presents an exigent circumstance justifying a minimally intrusive pat-down of the citizen's outer clothing for weapons."

¶ 15    Thus, by searching defendant's purse, Ponall exceeded the scope of a search justified solely by department policy. The State contends, however, that defendant gave the deputy unlimited consent to search. The State reasons as follows. The scope of a search is defined by its expressed object or purpose. *Jimeno*, 500 U.S. at 251; *Baltazar*, 295 Ill. App. 3d at 150. Thus, in *Jimeno*, an officer's request to search the defendant's truck for drugs included the right to search closed containers in which drugs might reasonably be found. *Jimeno,* 500 U.S. at 252. The State argues that, because Ponall never explicitly told defendant what he was looking for, the scope of the search was undefined and, thus, unlimited.

¶ 16    The State's argument, however, ignores that Ponall's request to search contained an express limitation: the person of defendant. Ponall testified that he told defendant, "I need to search you." A reasonable person in the circumstances would not have interpreted a request to search her person as a request to also search items of personal property, particularly one from which defendant had already distanced herself. Ponall commenced his search of the purse after defendant had placed it on the squad car, and he continued the search after he had brought the

purse to the front seat of the squad car. If Ponall wanted to obtain consent to search the purse, he could have told defendant "I need to search you and your purse." However, he did not do so.

¶ 17     Moreover, the search did have an objective: to look for weapons that the passenger might use to harm the officer while inside the squad car. Given the undisputed testimony that Ponall intended to keep the purse in the front seat with him, there was no objective reason to believe that he also needed to search it for weapons. This conclusion is consistent with *Smith*'s limitation on the proper scope of such a search: a quick pat-down of the suspect's outer clothing for weapons. *Smith*, 346 Ill. App. 3d at 164. To hold otherwise would allow an unscrupulous officer to bootstrap a department policy designed to protect his or her safety into a license to conduct a thorough search for evidence of crime absent any particularized suspicion.

¶ 18     The State cites numerous cases in support of its argument that the need to search for weapons includes the right to search closed containers or nearby areas accessible to the suspect, but all are distinguishable for requiring additional justification for the expanded search. The State cites, for example, *Michigan v. Long*, 463 U.S. 1032 (1983), in which the Supreme Court held that a nonconsensual search for weapons could include the passenger compartment of the vehicle in which the defendant was riding. However, the Court held that under the circumstances, which involved a traffic stop, the officers had to have an articulable suspicion that the suspect had a weapon. *Id.* at 1048-49. Here, the officer had no particularized suspicion (or, indeed, any suspicion at all) that defendant possessed a weapon.

¶ 19     The State also cites cases such as *People v. Hoskins*, 101 Ill. 2d 209, 216 (1984), for the proposition that a search incident to arrest includes the right to search the suspect's purse. However, the justification for the search incident to arrest exception is the need to remove any

weapons that a suspect might use to facilitate his escape and to secure any evidence that the suspect might be able to conceal or destroy. *Chimel v. California*, 395 U.S. 752, 762-63 (1969).

¶ 20     Here, Ponall did not suspect defendant of a crime, so there was no question of preventing the destruction of evidence. Moreover, defendant was no threat to resist or escape, as her decision to sit in the squad car was purely voluntary. "If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." *Arizona v. Gant*, 556 U.S. 332, 339 (2009). Here, the evidence was undisputed that Ponall intended to keep the purse in the front seat with him and thus there was no objective reason to believe that defendant could reach into it.

¶ 21                                        III. CONCLUSION

¶ 22     The judgment of the circuit court of Carroll County is affirmed.

¶ 23     Affirmed.